## CHAPPELL v. THE STATE.

No. 18151. Argued March 9, 1953—Decided April 14, 1953.

*Reuben A. Garland* and *Marvin O'Neal Jr.*, for plaintiff in error.

*Luther C. Hames Jr., Solicitor-General, Eugene Cook, Attorney-General,* and *J. R. Parham, Assistant Attorney-General,* contra.

CANDLER, Justice. Johnny Lorenzo Chappell and Millard Copeland Jr. were jointly indicted in Cobb County for the murder of James Clay Green. Chappell was tried separately and was convicted of murder with a recommendation for life imprisonment. He filed a motion for new trial on the usual general grounds and afterwards amended it by adding five special grounds. His amended motion was overruled, and to that judgment he excepted.

The court charged the jury as follows: "If two or more persons form a common intent and purpose to commit a crime, and in pursuance of such common intent and purpose such crime

is actually committed, then and in that event the act of each one present aiding and abetting in the commission of the crime is attributable to and is the act of all present aiding and abetting in the commission of the crime and acting with a common intent and purpose to commit the crime. If you believe that this defendant and another or others formed a common intent and purpose to commit the crime as charged in the bill of indictment, and if you believe that in pursuance of such common intent and purpose, such crime was actually committed, and if you further believe that this defendant or either of them committed the crime or was present aiding and abetting in the commission of the crime at the time it was committed, and if you believe that the crime was committed in pursuance of such common intent and purpose and this defendant aided and abetted the other in the commission of the crime, and you believe that beyond a reasonable doubt, it would be your duty to convict him." In special ground 1 of his motion for new trial, the defendant excepts to this instruction, alleging that it was harmful to him, for the following reasons: (a) it was not adapted, pertinent, or applicable to the facts, as there was no evidence of a conspiracy between the accused and his co-indictee to attack, harm, and kill the deceased, or to do either; (b) it was confusing to the jury because, without more, it led the jury to believe that a conspiracy between the accused and his co-indictee to commit the act charged was proved by evidence merely showing that they each stabbed the deceased; and (c) it was misleading because, without more, it caused the jury to believe that they were authorized to convict the accused on the theory of conspiracy, since there was evidence of the fact that the accused and his co-indictee each stabbed the deceased during the fatal fight. The exception is not meritorious. Conspiracy consists in a corrupt agreement between two or more persons to do an unlawful act, the existence of which agreement may be established by direct proof, or by inference, as a deduction from acts and conduct, which discloses a common design on their part to act together for the accomplishment of the unlawful purpose. In other words, the existence of a common design or purpose between two or more persons to commit an unlawful act may be shown by either direct or circumstantial evidence. *Davis* v.

*State,* 114 *Ga.* 104, 107 (39 S. E. 906) ; *Dixon* v. *State,* 116 *Ga.* 186 (42 S. E. 357) ; *McLeroy* v. *State,* 125 *Ga.* 240 (2) (54 S. E. 125) ; *Weaver* v. *State,* 135 *Ga.* 317 (69 S. E. 488) ; *Turner* v. *State,* 138 *Ga.* 808 (76 S. E. 349) ; *Lumpkin* v. *State,* 176 *Ga.* 446 (168 S. E. 241) ; *Simmons* v. *State,* 181 *Ga.* 761 (184 S. E. 291) ; *Harris* v. *State,* 184 *Ga.* 382, 392 (191 S. E. 439) ; *Mills* v. *State,* 193 *Ga.* 139 (17 S. E. 2d, 719).

As it relates to this issue, the State's evidence in substance shows: The accused, his co-indictee, and Hollis Martin went as uninvited persons to a birthday party at the colored recreational building in Marietta, Georgia, arriving about 11:30 p.m. They were all drinking. They were traveling in a car owned and operated by the accused. The co-indictee had some whisky and, after joining the birthday party, he, the accused and some of the guests drank it. The deceased was a guest at the party and had as his "date" a girl the co-indictee had previously "gone with" for several months. The deceased and his "date" were also drinking. The accused left the party and went to his car, which was parked in front of the recreational building, and soon thereafter his co-indictee and the deceased became involved in an argument. Hollis Martin went to the car of the accused and notified him of the trouble. The accused got his knife, opened it and immediately rejoined the party, either running or walking fast as he entered the building. The deceased was at that time lying on the floor and the co-indictee was over him and stabbing him with a switch-blade knife. The accused, with the same kind of knife, and without first making any inquiry as to the cause of the trouble, immediately joined his co-indictee and both stabbed the deceased several times while he was on the floor. The deceased had no weapon of any kind at that time and was begging the accused and his co-indictee not to kill him. The deceased got up from the floor, and the accused and his co-indictee pursued him as he ran out of the building. He fell near the building and died on his way to the hospital. The accused, his co-indictee, and Martin then left together in the car of the accused, the former driving it. They first went to the home of the co-indictee, and shortly afterwards to another place where they inquired about the condition of the deceased. They were told that he died while en route to the

hospital, and, on being so advised, the accused remarked, "I hope he had a happy landing." The accused and his co-indictee then fled Cobb County and were arrested during the same night north of Cartersville in an adjoining county and while they were going in an opposite direction from their homes. When arrested, they denied any connection with the killing or any knowledge of it. From an examination of the body of the deceased, it was found that he had been severely stabbed several times, some of the wounds being in his back, some in his chest, and others on his legs and hands. The evidence justified the instruction complained of; it showed concert of action between the defendant and his co-indictee; that their minds united and concurred in a common intent and purpose to commit an unlawful act; that each assisted the other in accomplishing a common design; and that an unlawful act was committed by them while they were thus acting together, aiding and abetting each other. By reasonable deductions from their acts and conduct, the jury was authorized to infer that the defendant and his co-indictee, as joint conspirators, corruptly agreed with each other to commit the unlawful act of which they were charged by the grand jury. And since an agreement between two or more persons to commit an unlawful act may be found from their acts and conduct alone, it is not necessary to show any prearrangement between them to thus commit such an act. Code, § 26-1901; *Dixon* v. *State,* supra; *Owens* v. *State,* 120 *Ga.* 296 (48 S. E. 21); *Turner* v. *State,* supra; *Weaver* v. *State,* supra; *Walker* v. *State,* 136 *Ga.* 126 (70 S. E. 1016); *McLeroy* v. *State,* supra; *Lynn* v. *State,* 140 *Ga.* 387 (7a) (79 S. E. 29); *Short* v. *State,* 140 *Ga.* 780 (80 S. E. 8); *Young* v. *State,* 151 *Ga.* 401 (107 S. E. 37); *Chance* v. *State,* 156 *Ga.* 428 (3a) (119 S. E. 303); *Harris* v. *State,* supra; *Bolton* v. *State,* 21 *Ga. App.* 184 (94 S. E. 95).

■ Special ground 2 of the defendant's motion for new trial alleges that the instruction quoted in the preceding division was error because the court, in connection therewith, should have charged the rule of circumstantial evidence, since the State relied entirely upon circumstances for proof of the conspiracy. This ground of the motion presents no question which we may consider. "It is not a valid ground of criticism upon a charge,

correct and proper in itself, that it fails to state some other rule or principle of law pertinent to the issues of the case." *Jackson* v. *State,* supra. To the same effect, see *Powers* v. *State,* 138 *Ga.* 624 (4) (75 S. E. 651); *Holston National Bank* v. *Howard,* 148 *Ga.* 767 (1) (98 S. E. 269); *Burns* v. *State,* 188 *Ga.* 22 (2 S. E. 2d, 627).

■ Special grounds 3 and 4 involve substantially the same question and may be considered together. Special ground 3 complains of the court's omission, without request, to instruct the jury on the subject of voluntary manslaughter as defined by Code § 26-1007; and special ground 4 alleges that the judge erred in refusing to give a requested charge, timely made, couched as written in the exact language of the aforementioned Code section. So, in these circumstances, if the evidence or the defendant's statement to the jury authorized a verdict for voluntary manslaughter, it was error for the judge not to instruct the jury upon that subject of the law. *Clements* v. *State,* 140 *Ga.* 165 (2) (78 S. E. 716); *McLaughlin* v. *State,* 141 *Ga.* 132 (2) (80 S. E. 631). We have carefully read the evidence and the statement of the accused, and find nothing in either which would have authorized a charge on voluntary manslaughter. The evidence clearly shows that the defendant, without any provocation, but with malice, actively participated in the killing by stabbing the deceased several times with a knife. As shown by his statement, the accused stabbed the deceased in the back when the latter ran into him or backed into him during a fight between the deceased and the defendant's co-indictee Copeland, and, according to the statement, there was no other cause for his participation in the killing. These two grounds of the motion for new trial are therefore not meritorious.

■ The following instruction was given by the court to the jury: "Now, gentlemen, if you find the defendant guilty of murder, the State is not insisting on capital punishment, the form of your verdict would be—We, the jury, find the defendant guilty, and we recommend him to the mercy of the court— that would mean that he would be sentenced to life imprisonment. If you find that the defendant is not guilty, then the form of your verdict would be—We, the jury, find the defendant not guilty—and after writing one of those verdicts on the back

of the indictment, let one of your members date it and sign it as foreman and return it into court. You may retire now, gentlemen." It is alleged that the defendant was injured by this instruction because it conveyed to the jury the solicitor's impression that the accused was guilty of murder, but not guilty enough to be electrocuted; and that it also amounted to an expression of the court's opinion that the defendant was guilty of the offense charged. There is no merit in this, and we will not elaborate further than to say that, in view of the evidence in the record, the State's counsel was extremely merciful and no injury is shown. Even error, if without injury, is never cause for reversing a judgment refusing a new trial.

■ The evidence is amply sufficient to support the verdict; it shows an unlawful killing with malice, and there is, accordingly, no merit in the general grounds of the motion for new trial. There is, however, no present insistence by the plaintiff in error that the verdict was not authorized by the evidence.

The judgment refusing a new trial is not erroneous for any reason assigned.

*Judgment affirmed. All the Justices concur, except Wyatt, J., who dissents from the rulings in the first and second divisions of the opinion and from the judgment; and Atkinson, P. J., not participating.*