## 28776. EBERHEART v. THE STATE.

UNDERCOFLER, Justice.

This case is before this court on appeal and mandatory review of the death sentences imposed. The appellant was charged with kidnapping and rape occurring July 13, 1973; indictments were returned against him on October 1, 1973; his trial began on December 10, 1973; and sentences were imposed on December 10, 1973.

The state presented evidence to establish the following: On July 13, 1973, the victim, a 25-year-old married woman, was traveling south on highway I-75 through Georgia enroute from Detroit, Michigan, where she had just graduated from college, to join her husband in Florida. About 8:00 p.m. that day one of her automobile tires blew out near Adel in Cook County, Georgia. After waiting an hour to an hour and a half for assistance she began to try to change the tire herself.

Eddie Dean Anderson, John Wesley Hooks, the appellant John Wallace Eberheart, Jr., and two hitchhikers drove up and all except one hitchhiker got out and walked toward her. Anderson asked, "Do you want us to change your tire?" She replied, "No, please, just go—send help back for me." The group departed but returned 20 to 30 minutes later without the hitchhikers and parked about six feet behind the victim's car. They got out of their car and Anderson said to her, "Hold it, lady, there ain't anybody going to help you—there isn't anybody going to help you at all." Hooks and appellant Eberheart came toward her and Eberheart struck her. Hooks struck her. They started beating her and she started screaming — screaming for mercy and telling them to please let her go, but Eberheart and Hooks kept hitting her. Anderson got in the car and started it. They pulled the car up next to hers. She was fighting with Eberheart and Hooks was still hitting her. She continued screaming and trying to get away. She was unable to escape. They hit her on the head, knocked her to the

pavement and then started dragging her. The first blow Eberheart struck (on her head) knocked her glasses off and knocked her to the pavement. The blows dislocated her jaw, broke her nose, sheared off two of her molars, uprooted two of her teeth and split her lip. Then, they kicked her. Hooks kept hitting her and said to Eberheart, "Open the door — get her in." She was still fighting and Eberheart hit her a couple more times. She screamed, fought, clawed, bit and kicked and elbowed the appellant "right in his guts." She started bleeding. Eberheart opened the door and Hooks threw her over and assisted in pushing her into the car. Anderson drove the car off, leaving Eberheart at the scene. The victim was on the floor of the car and Hooks kept choking her and hitting her. She continued to fight and Hooks continued hitting her saying, "Lay down, you honky bitch, or I'm going to kill you." She continued to fight, opened a door and tried to push Hooks out. Hooks elbowed her in the face, choked her, and said, "you . . . white bitch, if you move I'm going to break your neck." He choked her until she could not breathe. They pulled off the interstate and Hooks said, "Come on, you bitch, get out." He hit her down on the pavement and kept hitting and kicking her. Hooks pulled her by her hair and dragged her across the asphalt road. In doing so her left thigh was bruised. Anderson returned to the scene of the abduction to pick up Eberheart. Hooks dragged the victim into the woods, pulled and ripped off her clothing, and raped her while she lay between two stumps infested with large red ants known locally as "cowboys." Hooks then forced her to commit sodomy and again raped her. Upon completion he spat on her. Eberheart and Anderson rejoined them and Eberheart raped her and forced her to commit sodomy. Anderson then raped the victim. When the three left she fled over fences and through a cornfield until she reached an occupied house trailer and asked for help. Medical examination and evidence found at the scene substantiated her testimony.

Her injuries consisted of a dislocated jaw, broken nose, numerous lacerations and bruises, concussion, teeth sheared off, a split lip, loss of hearing in her right ear and internal injuries to her stomach that continued

for some time after that from being kicked in the stomach by Hooks and Eberheart (the appellant).

The appellant testified that on the night in question, although he did not know Anderson but knew Hooks, he assisted Anderson in selling some tires for which he was paid $10. Eberheart asked Anderson and Hooks if he could accompany them that evening. He alleges Anderson and Hooks abducted the victim but he, Eberheart, did not touch the victim, and, "I didn't even know what was going on." He was left at the scene but Anderson returned for him. He was only interested in getting home. They returned to Hooks and the victim. The victim was on the ground. He and Hooks left Anderson with the victim but later returned and picked him up. He denies hitting or touching the victim or seeing her raped.

Following his conviction and sentences to death on each of the charges, Eberheart appeals to this court alleging that the trial court erred as follows:

a. "Appellant's death sentences, imposed pursuant to Georgia Laws, 1973, pp. 159-172 [Code Ann. § 27-2534.1], are unconstitutional, cruel and unusual punishments under the rule of Furman v. Georgia, 408 U. S. 238 (1972) [92 SC 2726, 33 LE2d 346]. . ."

b. "The exclusion from the jury which determined appellant's guilt of veniremen with conscientious scruples against the death penalty violated appellant's rights under the due process and equal protection clauses of the United States Constitution."

c. "The trial court failed to apply properly the standards of Witherspoon v. Illinois, 391 U. S. 510 (1968) [88 SC 1770, 20 LE2d 776], and erroneously allowed the exclusion for cause of veniremen who had scruples concerning capital punishment."

d. "Exclusion of death-scrupled veniremen on the panel from which appellant's jury was selected violated appellant's Sixth Amendment right to a jury which reflects a fair and representative cross section of the community."

e. "After request of defendant's counsel for separate examination of the jurors prior to qualifying twelve jurors in the box, before voir dire questioning, the

lower court erred when it required defendant's counsel to ask voir dire questions to the entire jury list, over sixty (60) persons, en masse."

f. "That, over the defendant's objections of irrelevancy and immaterial to the issue, the court erred in allowing the state to introduce into evidence at the first stage of a bifurcated criminal trial for rape and kidnapping, photographs of the victim which were taken two days after the alleged rape and kidnapping which showed only certain bruises and abrasions."

g. "That, over the defendant's objections of irrelevancy and immaterial to the issue, the court erred in allowing the state to introduce into evidence at the first stage of a bifurcated criminal trial for rape and kidnapping, the clothing and earring of the victim which in themselves were not probative of either the crime or the accused's guilt or innocence."

h. "The court erred when it charged the law of conspiracy in that there was no evidence to show that this defendant had conspired with two other parties to commit any crime."

i. "Since the district attorney did not submit any aggravating circumstances in evidence during the second, sentence stage of the trial, the jury's sentence of death is invalid."

j. "That the punishment sentences for kidnapping and rape should not have been accepted by the court for the reason that the death sentences only repeated the same wording given to them in the written charge." *Held:*

1. The constitutionality of appellant's death sentences, imposed pursuant to Ga. L. 1973, p. 159 et seq. (Code Ann. § 27-2534.1 et seq.) turns on the constitutionality of the statute in question and the constitutionality of the application of the death penalty to John Wallace Eberheart, Jr. The constitutionality of the statute was upheld in *Coley v. State,* 231 Ga. 829, and *House v. State,* 232 Ga. 140 (3). The constitutionality of the application of the death penalty to the appellant in the instant case has been determined upon review of the sentences by this court pursuant to the above statute.

2. The trial court did not err in excusing for cause jurors who stated that they could not, under any

circumstances, consider imposition of the death penalty.

During voir dire examination two jurors were excused for cause after stating that they could never impose the death penalty. It is unmistakably clear from their answers that they would automatically vote against the imposition of capital punishment without regard to any evidence that might be developed in the case. Under Witherspoon v. Illinois, 391 U. S. 510 (88 SC 1770, 20 LE2d 776), it was not error to dismiss these jurors. *Whisman v. State,* 224 Ga. 793 (164 SE2d 719); *Johnson v. State,* 226 Ga. 511 (175 SE2d 840); *Henderson v. State,* 227 Ga. 68 (179 SE2d 76); *Hart v. State,* 227 Ga. 171 (179 SE2d 346); *Pass v. State,* 227 Ga. 730 (182 SE2d 779). There is no merit in enumerations of error b, c, and d, all of which involve the same issue of disqualification.

3. In Enumeration of Error e appellant alleges, "After request of defendant's counsel for separate examination of the jurors prior to qualifying twelve jurors in the box, before voir dire questioning, the lower court erred when it required defendant's counsel to ask voir dire questions to the entire jury list, over sixty (60) persons, en masse."

The transcript reveals appellant moved the court as follows: "If your Honor please, at this time I ask the court to provide for the defendant the entire panel of 48 jurors before I proceed to challenge any one of them; and, I make this request under *Britten v. State,* 221 Ga., page 97 [143 SE2d 176]."

The motion was granted. Nowhere in the transcript does there appear any request or inference by counsel for appellant that he desired to propound voir dire questions to each individual juror or any objection to the procedure being followed.

"A party cannot during the trial ignore what he thinks to be an injustice, take his chance on a favorable verdict, and complain later. *Joyner v. State,* 208 Ga. 435 (2) (67 SE2d 221); *Sides v. State,* 213 Ga. 482 (99 SE2d 884); *Williamson v. State,* 217 Ga. 162 (1) (121 SE2d 782); *Abrams v. State,* 223 Ga. 216 (9) (154 SE2d 443); *Collier v. State,* 223 Ga. 867 (159 SE2d 73); *Riggins v. State,* 226 Ga. 381 (2) (174 SE2d 908). See also *Patterson v. State,* 228 Ga. 389 (185 SE2d 762) and *Parks v. State,* 230 Ga.

157 (195 SE2d 911). This enumeration of error presents nothing for review by this court.

4. Photographs of the victim taken two days after the offense showing residual bruises and abrasions and clothing worn by the victim at the time of the offense as well as an earring torn from her ear were material and relevant to the issue of the appellant's guilt or innocence.

The annotated criminal code of Georgia, § 26-2001, provides, "A person commits rape when he has carnal knowledge of a female, forcibly and against her will" and, "No conviction shall be had for rape on the unsupported testimony of the female." Ga. L. 1968, pp. 1249, 1299.

The exhibits in question evidence the force used against the victim and are also relevant and material to the issue of whether the carnal knowledge of the victim was against her will. They were also admissible to corroborate the testimony of the victim. *Johnson v. State,* 226 Ga. 511 (2), supra; *Henderson v. State,* 227 Ga. 68 (5), supra; *Allen v. State,* 231 Ga. 17 (5) (200 SE2d 106); *Dixon v. State,* 231 Ga. 33 (2) (200 SE2d 138).

The trial court did not err in admitting the questioned exhibits.

5. It was not error to charge the law of conspiracy where the evidence shows a concert of action on the part of three persons indicative of prior planning.

The evidence indicated that appellant and the other two participants in these offenses had engaged in a tire sale earlier in the evening and that they had approached the victim stranded alone beside the highway when two hitchhikers were with them. They later returned and appellant participated in abducting the victim by grabbing her, hitting her, kicking her and opening the door of the car in which the victim was carried away. Although appellant denies touching or raping the victim there is evidence that he too raped the victim.

The trial court instructed the jury, ". . . If you find that there was a conspiracy to commit the crime charged, in either one of these indictments, and that the defendant, now on trial was a party to such conspiracy, and that he did commit any act, and further, such conspiracy, and that the purpose and design of the conspiracy was to commit any of the acts charged in this

indictment, then, you would be authorized to find the defendant guilty of the charge in that count in that particular indictment."

"Conspiracy consists in corrupt agreement between two or more person to do an unlawful act, the existence of which agreement may be established by direct proof, or by inference, as a deduction from acts and conduct, which discloses a common design on their part to act together for the accomplishment of the unlawful purpose." *Chappell v. State,* 209 Ga. 701 (1) (75 SE2d 417); *Dixon v. State,* 231 Ga. 33 (4), supra. Code Ann. § 26-802 provides that "any party to a crime who did not directly commit the crime may be indicted, tried, convicted and punished for commission of the crime upon proof that the crime was committed and that he was a party thereto. . ." Ga. L. 1968, pp. 1249, 1271. Under the circumstances it was not error to instruct on the law of conspiracy even though conspiracy is now a separate crime in Georgia, and the appellant was not charged with having committed the crime of conspiracy.

In Enumeration of Error i appellant alleges that the jury's sentence of death is invalid because the district attorney did not submit any aggravating circumstances in evidence during the second, sentence stage of the trial.

Ga. Laws 1973, pp. 159 et seq. at page 162 provides in the pre-sentence hearing: "In such hearing, subject to the laws of evidence, the jury or judge shall hear additional evidence in extenuation, mitigation, and aggravation of punishment, including the record of any prior criminal convictions and pleas of guilty or pleas of nolo contendere of the defendant, or the absence of any such prior criminal convictions and pleas: Provided, however, that only such evidence in aggravation as the State has made known to the defendant prior to this trial shall be admissible." (Code Ann. § 27-2534). The prosecuting attorney offered no aggravating matter in the pre-sentence hearing.

The bifurcated trial was created to withhold matters inadmissible on the issue of guilt or innocence from the jury until that issue had been determined. The statute is clear that the pre-sentence hearing is for additional evidence and in no way excludes from consideration on

sentence the matters heard on the issue of guilt or innocence. This enumeration of error is not meritorious.

7. Finally, appellant alleges "That the punishment sentences for kidnapping and rape should not have been accepted by the court for the reason that the death sentences only repeated the same wording given to them in the written charge."

The statute, Ga. L. 1973, pp. 159, 163-165, requires: "The statutory instructions as determined by the trial judge to be warranted by the evidence shall be given in charge and in writing to the jury for its deliberation. The jury, if its verdict be a recommendation of death, shall designate in writing, signed by the foreman of the jury, the aggravating circumstance or circumstances which it found beyond a reasonable doubt." Code Ann. § 27-2534.1.

We note that designation of a circumstance is something far different than the narration of facts that appellant urges is required. The statute requires designation of the circumstance or circumstances, an ultimate issue or issues. This the jury did. Neither can we find error by the jury in repeating the same wording given to them in the written charge. If the wording stated is what the jury found, and there is no contrary indication in the transcript of trial, they did not err in their finding.

8. Sentence review. If the death penalty in the case of John Wallace Eberheart, Jr., is to pass the test of constitutionality it must conform to the standards set forth in Ga. L. 1973, p. 159 et seq., viz., the sentence of death must not have been imposed under the influence of passion, prejudice, or any other arbitrary factor; the evidence must support the jury's finding of a statutory aggravating circumstance; and the sentence of death must not be excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. Code Ann. § 27-2537 (c) (1-3). The duty of making these determinations rests on this court.

In accord with the statutory mandate we have reviewed the trial transcript and record including the evidence and made a comparison with the evidence and sentences in similar cases. Those similar cases we considered in reviewing the case are listed in an appendix attached to this opinion.

Using the standards prescribed for our review by the statute, we conclude that the sentences of death imposed in this case were not imposed under the influence of passion, prejudice or any other arbitrary factor, and the evidence supports the jury's finding of statutory aggravating circumstances.

Considering both the crime and the defendant, and after comparing the evidence and sentences in this case with that of previous cases, we conclude the sentences of death are not excessive or disproportionate to the penalty imposed in similar cases. We affirm the sentences of death in this case.

*Judgment affirmed. All the Justices concur except, Gunter, J., who dissents.*

ARGUED APRIL 8, 1974 — DECIDED APRIL 30, 1974 — REHEARING DENIED MAY 21, 1974.

*M. Dale English, David Evan Kendall,* for appellant.

*Vickers Neugent, District Attorney, Arthur K. Bolton, Attorney General, B. Dean Grindle, Jr., Thomas P. Burke, Assistant Attorneys General,* for appellee.

APPENDIX.

Similar cases considered by the court: *Miller v. State,* 224 Ga. 627 (163 SE2d 730); *Henderson v. State,* 227 Ga. 68 (179 SE2d 76); *Ford v. State,* 227 Ga. 279 (180 SE2d 545); *Watson v. State,* 227 Ga. 698 (182 SE2d 446); *Lumpkin v. State,* 228 Ga. 391 (185 SE2d 770); *Fuller v. State,* 228 Ga. 546 (186 SE2d 888); *Allen v. State,* 228 Ga. 859 (188 SE2d 793); *Griffin v. State,* 229 Ga. 165 (190 SE2d 61); *Hobbs v. State,* 229 Ga. 556 (192 SE2d 903); *McCrary v. State,* 229 Ga. 733 (194 SE2d 480); *Grantling v. State,* 229 Ga. 746 (194 SE2d 405); *Massey v. State,* 229 Ga. 846 (195 SE2d 28); *Akins v. State,* 231 Ga. 411 (202 SE2d 62); *Coley v. State,* 231 Ga. 829 (204 SE2d 612).

GUNTER, Justice dissenting.

I dissent from the judgment of the court on the ground that Georgia's current statutes permitting the imposition of the death penalty violate the Eighth and Fourteenth Amendments to the United States

Constitution pursuant to the decision of the Supreme Court of the United States in Furman v. Georgia, 408 U. S. 238 (92 SC 2726, 33 LE2d 346) (1972). See the concurring part of my concurring and dissenting opinion in *Coley v. State,* 231 Ga. 829 (1973).

Since it is my view that at the beginning of the trial of this case in the trial court, the death penalty could not be constitutionally imposed, it was error to exclude jurors for cause who were opposed to the imposition of the death penalty. If my position, that the death penalty cannot be constitutionally imposed pursuant to Georgia's current statutes, is correct then the exclusion of such jurors for cause militated against the right of the accused to have a representative cross section of the community population determine his guilt or innocence, irrespective of the punishment to be imposed in the event of guilt. If my view that the death penalty could not be imposed in this case is correct, then exclusion of the jurors for cause was erroneous, and such exclusion would require the grant of a new trial. See Peters v. Kiff, 407 U. S. 493 (92 SC 2163, 33 LE2d 83) (1972), and Prof. White's law review article, The Constitutional Invalidity of Convictions Imposed by Death-Qualified Juries, 58 Cornell L. Rev. 1176 (July, 1973).

I respectfully dissent.