29758, 30006. COKER v. THE STATE (two cases).

Ingram, Justice.
The case of the appellant, Ehrlich Anthony Coker, is before this court by direct appeal and for mandatory

review of the death sentence received at trial. The crimes which appellant was charged with committing occurred on September 2, 1974; indictments were returned against him on October 18, 1974; and, a trial on appellant's special plea of insanity was held on November 19, 1974. The appellant was found competent to stand trial and his trial on the general issue got under way on November 20, 1974, resulting in sentences imposed December 4, 1974. A majority of the court find no reversible error and affirm the convictions and sentences. We agree with the trial judge that "[d]efendant was fully represented by capable and effective [counsel] . . . and received a fair trial . . ."

The appellant was convicted of armed robbery and sentenced to life imprisonment; he was convicted of rape and sentenced to death; he was convicted of kidnapping and sentenced to 20 years; he was convicted of motor vehicle theft and sentenced to seven years; and, he was convicted of escape and sentenced to five years.

I.

Summary of the Evidence.

The prosecution presented evidence which established the following: On the evening of September 2, 1974, around 7:30 p.m., several inmates attended a meeting of Alcoholics Anonymous in the chapel of the Ware County Correctional Institution. Around 8:10 p.m., an inmate, brandishing a five or six-pound steel bar, announced, "Be still . . . this is an escape." The supervisor of the meeting, Corrections Counselor George Silver, requested that the inmates who were not involved be allowed to get behind the counselor. Several inmates complied with the counselor's request.

At this point, three inmates, including the appellant, began tearing through a plywood ceiling with the steel bar. A few minutes later, Warden Bruce Brown discovered that the inmates had torn through the roof of the chapel, gone across the building to an area not enclosed by the prison fence, and jumped off another building into the woods adjoining the prison grounds.

Later the same evening, around 11:00 p.m., a man dressed in prison clothes suddenly came through the back door of the home of 16-year-old Allen David Carver. Carver was in the kitchen with his wife while his

three-week-old son was in a bedroom asleep. The intruder swung a board toward and close to Allen Carver.

Mr. Carver identified the appellant as the man who broke into his home. Appellant ordered Carver's wife to tie up her husband and she tied his hands and feet. The appellant then tied Carver to the bathroom shower rod with Carver's belt. Appellant confiscated Carver's wallet, clothes, money totaling $20.30 and keys. Subsequently, appellant gagged Carver with his wife's underpants. When appellant was not using the board to intimidate the young couple, he used a four-inch steak knife which he took from Mrs. Carver.

After appellant had bound and gagged Allen Carver in the bathroom, the appellant raped Mrs. Carver. At the time, Mrs. Carver was physically weak, having recently left the hospital following childbirth, and appellant was told this information. After appellant completed the rape he inquired and was told how to crank the Carvers' car.

Appellant then forced Mrs. Carver to accompany him in the car and made her sit directly next to him while effecting an escape from the locale. Before appellant left with Mrs. Carver, he told her husband, whom he left bound and gagged, ". . . I'm taking her with me. If you get loose and call the police, your wife is going to be dead." Appellant was apprehended in the Carver car by police officers several hours later and Mrs. Carver was released. Appellant was still carrying the knife which he took and used in the commission of the crimes.

II.

Enumerations of Error.

In his attack on the conviction and sentence in case No. 29758, appellant asserts 79 enumerations of error. These enumerations will be grouped, where appropriate, as applicable legal principles are common to more than one enumeration.

1. In Enumerations 1, 3 and 4, appellant alleges improper joinder for trial of the charges of escape and motor vehicle theft with the other charges contained in the indictment.

The recent case of *Jarrell v. State,* 234 Ga. 410 addressed this issue. In a case where "[f]rom the nature of the entire transaction it would be almost impossible to

present to a jury evidence of one of the crimes without also permitting evidence of the other crimes to be introduced since they were all part of one continuous transaction covering a period of [several] hours," (*Henderson v. State,* 227 Ga. 68, 76 (179 SE2d 76); *Owens v. State,* 233 Ga. 905) and "Two or more offenses . . . are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan" (*Dingler v. State,* 233 Ga. 462, 463 (211 SE2d 752)), the joinder of the several crimes is not error. Code Ann. § 26-506.

In the present case, the motor vehicle was taken to perfect the appellant's escape and was used as an instrument of the kidnapping while fleeing from the scene of the rape and robbery. The trial judge did not abuse his discretion in denying the severance "in the interest of justice." We find no error here.

2. In Enumeration 2, appellant alleges the trial court erred in overruling appellant's written motion to quash the indictment.

In his motion, appellant made a general attack on the constitutionality of the Georgia Death Penalty Statute, Ga. L. 1973, pp. 159, 163 (Code Ann. § 27-2534.1). This statute has been repeatedly upheld by a majority of this court. See *Coley v. State,* 231 Ga. 829, 833 (204 SE2d 612); *Eberheart v. State,* 232 Ga. 247 (206 SE2d 12); *Hooks v. State,* 233 Ga. 149 (210 SE2d 668); *Mitchell v. State,* 234 Ga. 160. We affirm those rulings here.

Additionally, appellant attacks the armed robbery statute, Code Ann. § 26-1902, the rape statute, Code Ann. § 26-2001 and the kidnapping statute, Code Ann. § 26-1311, as being unconstitutionally vague, indefinite, discretionary and overbroad so as to violate due process and equal protection clauses of the Georgia and United States Constitutions.

Neither at trial nor before this court has appellant supported these contentions with persuasive argument or authority. We have read the statutes and believe they properly apprise a defendant of the charge he must defend against and are sufficient to protect him from double jeopardy. We affirm the trial court's ruling.

Appellant objected to Count 5 (escape) because it stated and described each and every charge of which the

defendant stood convicted. This objection was recognized by the trial court in that a stipulation subsequently was entered into which stated only that the defendant "has prior to this time and prior to the date on which he was charged with escape, been convicted of a prior felony, and was at the time of the alleged escape in lawful confinement in the Ware Correctional Institution."

There is no merit to this enumeration even if we assume the initial objection had merit.

3. In Enumeration 3, appellant alleges the trial court erred in refusing to admit into evidence at the special plea of insanity trial the summary of a doctor's report of examination of the appellant.

There is only a bare allegation in appellant's brief that it was harmful for the trial court to refuse to admit into evidence the summary of Dr. Johnson, the appellant's psychiatrist, containing his report of examination and recommendations of the condition of the appellant at the time of the commission of the alleged criminal acts and at the time of trial.

All of the doctor's findings could be elicited on direct examination. The doctor was a witness at the trial. To admit his report in evidence would bolster his testimony by providing a written memorandum of his testimony for the jury not permitted in the case of other witnesses. Additionally, admission of the summary into evidence would have been cumulative and repetitive of the witness' testimony which appears to have been full and exhaustive concerning his findings as a result of the examination he made of appellant. In the absence of any showing of injury this bare claim of error presents nothing for review. *Brown v. City of Atlanta,* 66 Ga. 71; *Robinson v. State,* 229 Ga. 14, 16 (189 SE2d 53).

4. In Enumerations 6, 7, 8, 9, 18, 21 and 41, appellant alleges error in the admission of specific opinion evidence which he characterizes as "conclusory statements" or incompetent evidence. Some of the statements occurred during the special plea of insanity trial and others occurred during the trial of the general issue. The statements in dispute are as follows:

a (6). Allowing the defense psychiatrist to discuss the "M'Naughton case" is alleged as error in that it

affected the credibility of the witness because of the poor quality of his response.

The transcript shows defense counsel initiated the discussion of appellant's ability to distinguish right and wrong on direct examination in the special plea trial although this was not an issue in that trial. See *Brown v. State,* 215 Ga. 784 (1) (113 SE2d 618) for an expression of the test of competency to stand trial. As we read the testimony, the cross examination concerning the McNaughton test was a proper effort by the district attorney to demonstrate the irrelevance of the right and wrong issue in the special plea trial. No error appears.

b (7). Although appellant's objection to the opinion testimony of a police officer, that appellant gave ordinary and reasonable answers to ordinary questions, was sustained, appellant now objects because the court failed thereafter to instruct the jury about it. Part of appellant's sustained objection was that, "He can state what the response would be and let the jury decide." The action of the trial judge in sustaining the objection indicated agreement with the position of defense counsel. In the absence of a timely request, opinion evidence does not require an instruction as to weight. *Vandable v. State,* 127 Ga. App. 306 (2) (193 SE2d 197). Subsequent questioning established a basis for the conclusion. If the facts are given on which opinions are based, laymen are competent to give opinions on a person's mental condition. *Strickland v. State,* 137 Ga. 115 (4) (72 SE 922); *Proctor v. Pointer,* 127 Ga. 134 (2) (56 SE 111).

c (8). Appellant argues the trial court erred in overruling his objection to a "conclusory" statement of Officer Gerald Murhee, as to whether appellant knew the identity of the officer.

Prior to the objected to statement, Officer Murhee testified that on the day prior to the day he stated appellant knew him, he (Officer Murhee) "advised Mr. Coker as to who I was, and I advised him of his rights, and I asked him some questions." Under these circumstances, the facts underlying the witness' conclusion were stated and we find no error.

d (9). The trial court properly overruled appellant's objection to the testimony of Warden Bruce Brown of

Ware Correctional Institution that the appellant was "as normal as any other inmate." The warden testified he was in daily contact with appellant from the early part of the year, that he observed him day in and day out and talked to him occasionally and couldn't tell any change in him.

e (18). Appellant's contention that the court erred in overruling his objection and allowing the witness Shiver to testify that prisoner Brinks "was talking loud enough where all the inmates and I could hear" is without merit. Witness Shiver, a correction officer for five years was supervising an Alcoholics Anonymous meeting in the chapel with about 33 persons present. His statement "all the inmates" obviously referred to all of the inmates present in the chapel, a room approximately 18 x 24 feet, and not all of the inmates in the institution.

f (21). Appellant alleges, "The court erred in permitting the witness Shiver to testify that, '. . . there were nine inmates left at this time, and I asked them again if they were not involved to get behind me, . . .' where a Ware County Superior Court jury had immediately prior to the present case, acquitted three of these same nine defendants on charges of mutiny in a penal institution." The appellant was charged with escape — not with mutiny — and this testimony was admissible to show appellant had an opportunity to disassociate himself from the escape. Any action on charges of mutiny was irrelevant to any issue before the trial court in appellant's case.

6 (41). Enumeration 41 was not argued by appellant in his appeal and is considered abandoned. Rule 18 (c) (2) Supreme Court.

5. Enumerations 10, 11, 12, 13 and 14 concern instructions given, or the denial of requested instructions, during the trial of the special plea of insanity.

The instructions objected to were:

"Now, I charge you that the burden rests upon the moving party, that is, Coker, the defendant, to satisfy the jury of the truth of his case by a preponderance of the evidence."

"Now, where in the opinion of the jury the evidence is equally balanced upon each side, where the jury believe the witnesses on each side equally credible, where the jury

believes the evidence is as strong on one side as the other, then a preponderance of the evidence would not be carried, and in such case it would be the duty of the jury to return a verdict in favor of the State in this case."

"I further charge you, ladies and gentlemen, that whenever a plea of insanity is filed it shall be the duty of the court to cause the issue on the plea to be first tried by a special jury, and if found to be true the court shall order the defendant to be delivered to the Superintendent of the Milledgeville State Hospital, there to remain until discharged in the manner prescribed by law . . .

"I further charge you that under Georgia law every person is presumed to be of sound mind and discretion, but the presumption may be rebutted."

Instructions requested by appellant which were denied by the trial court included several requests based on the dissenting opinions in *Grace v. State,* 231 Ga. 113 (200 SE2d 248).

Read in context, we find no harmful error in the trial judge's instructions in the trial of the special plea of insanity. Code Ann. §§ 26-606, 38-105, 38-106 and 38-107. *Grace v. State,* supra, concerned the issue of insanity at the time of commission of an alleged criminal offense—not the competence of an accused to stand trial.

Furthermore, even if the views contained in the dissenting opinions in *Grace* were held applicable to the trial of a special plea of insanity, the alleged error would be harmless under the evidence in this case. The evidence was overwhelming that appellant was competent to stand trial. See *Brown v. State,* supra.

We note that on the trial of the general issue (guilt or innocence) the trial judge included in his instructions to the jury a full, clear and comprehensive charge on insanity which embraced the dissenting opinions in *Grace v. State,* supra.[1] Thus, appellant received the benefit of

---

[1]The pertinent excerpt of the trial court's instructions on insanity at the trial on the general issue is as follows:

"I further charge you that no person shall be convicted of a crime in the State of Georgia unless each element of the crime is proved beyond a reasonable doubt.

instructions on the insanity issue beyond the requirements of the majority decisions of this court.

---

"I further charge you that intention is an essential element of any crime, and that the burden is on the State to prove such intention beyond a reasonable doubt.

"I further charge you that while the burden is not on the defendant to disprove intention, nonetheless when he introduces some competent evidence of insanity which might tend to negate evil intention in the defendant at the time of the commission of the alleged crime, then the burden falls upon the State to prove beyond a reasonable doubt that the defendant was sane at the time of the alleged crime, and, therefore, had the requisite criminal intent.

"I further charge you that under Georgia law a person will not be presumed to act with criminal intention, but the triors of fact, the jurors, may find such intention or the absence thereof upon consideration of the words, conduct, demeanor, motives, evidence of sanity or insanity, and all other circumstances connected with the act for which the accused is prosecuted.

"I further charge you that this presumption of sanity may be relied on by the State, and in most cases the State need not bear the burden of introducing evidence and of persuasion as to the sanity of the accused in criminal proceedings; but once the affirmative defense of insanity is raised by the defendant, once the accused has come forward with some competent evidence of insanity whereby the mental capacity of the accused is placed in issue, then the State, in order to prove the criminal intent of the accused, must present evidence to prove the sanity of the accused beyond a reasonable doubt.

"I charge you that the question of whether or not the defendant has successfully rebutted the presumption of sanity in this case is for you to decide. It is not necessary that the defendant introduce evidence of his insanity sufficient to convince you beyond all reasonable doubt, but, rather, it is only necessary for him to introduce some competent evidence of his insanity. When he has done this, the burden shifts to the State to prove his sanity beyond a reasonable doubt."

Whether the jury viewed the instruction under Code § 27-1502 that "if [the plea of insanity] is found to be true, the court shall order the defendant to be delivered to the superintendent of the Milledgeville State Hospital, there to remain until discharged in the manner prescribed by law" as a caveat that appellant would go free or as an assurance that he would not go free is open to argument. However, in view of the stage of the proceeding when this instruction was given, it was less harmful than the instruction in *Hulsey v. State,* 233 Ga. 261, 262 (210 SE2d 797) where the trial judge charged the jury the provisions of Code Ann. §§ 27-1503, 88-506.7 prescribing the actions to be taken by the trial judge if a jury returns a verdict of not guilty by reason of insanity. There, this court held: "Though we have said it is inappropriate to charge the latter part of Code Ann. § 27-1503, relating to the consequences of such a verdict by the jury, does the charging of the latter portion of the statute amount to harmful error requiring a reversal? We conclude that charging the latter part of Code Ann. §§ 27-1503 and 88-506.7 in such a case, though inappropriate, does not amount to harmful error requiring a reversal of the judgment."

As we said in *Hulsey,* Code Ann. § 27-1503, the better practice is not to charge Code § 27-1502. However, we conclude there was no reversible error in the instruction given here in the context of the entire charge.

6. In Enumerations 15 and 16, appellant contends that the verdict of the jury and the judgment of the court finding the appellant competent to stand trial were decidedly against the weight and strength of the evidence and were contrary to the evidence and law of the case. We disagree.

The determination of a preponderance of the evidence is for the jury. This court will not set aside a verdict (or judgment) finding against a special plea of insanity at the time of trial unless it appears that the evidence demands a finding in favor of the plea. *Griffin v. State,* 195 Ga. 368 (24 SE2d 399); *Polk v. State,* 19 Ga. App. 332 (3) (91 SE 439).

The appellant testified that he had been hit in the head with a baseball bat and knocked unconscious when

he was 10 or 11 years old, that he began drinking alcohol heavily while he was overseas in Korea and loses consciousness and blacks out when he is drinking, that he has memory lapses and has heard voices talking to him.

However, appellant's testimony was intelligent and was responsive to questions on both direct and cross examination. He was oriented as to time and place, remembered events and dates before and after the offenses, his personal history and people with whom he had contact.

The defense attorney testified concerning difficulties he had communicating with the appellant. The thrust of this testimony was that the appellant persisted in claiming that the rape victim was a willing participant.

Dr. Clarence M. Johnson, Psychiatrist, Mental Health Center of Waycross, Georgia, testified that he examined the appellant but that his examination was not definitive. In his opinion, the appellant apparently suffered from emotional and psychological problems he characterized as a "lack of emotionality" and a history of combativeness and an inability to get along with others. The doctor testified that, "From the history I obtained from his early behavior that have been sort of anti-social, or against society, his juvenile record, failure to learn from his behavior, from experience, I would say that his ability to feel guilt associated with acts as to whether they are right or wrong, his decisive opinion ... of what's right or wrong probably is impaired." Subsequently, Dr. Johnson testified that he could not express an opinion at that time as to whether appellant knew right from wrong.

Dr. Johnson also stated: "In view of his inappropriate affect or feeling tones along with explosive or impulsive behavior that is sometimes combative and his emotional detachment from stressful events that have happened in the past, it appears we are dealing with the underlying psychiatric disorder." Dr. Johnson concluded his testimony by stating that he had not reached any medical opinion in the case as he was "unable to determine a diagnosis."

The Warden of the Ware Correctional Institution, where the appellant was confined prior to his escape,

characterized the appellant as normal as any other inmate. The prison medical technician expressed the same opinion.

Under these circumstances, we hold that the evidence was more than ample to support a finding against the special plea of insanity and to determine that appellant was competent to stand trial. *Lingo v. State,* 224 Ga. 333 (4) (162 SE2d 1).

7. Appellant alleges (Enumeration 17) that the court erred in overruling appellant's objection to the district attorney's qualifying the jury as to the death sentences.

In *Ross v. State,* 233 Ga. 361 (211 SE2d 356), and *Owens v. State,* 233 Ga. 869 (214 SE2d 173), this court established that where veniremen are excused because of opposition to the death penalty it was necessary to include a transcription of the voir dire examination to allow this court to determine if the veniremen excused were unalterably opposed to the death penalty as required by Witherspoon v. Illinois, 291 U. S. 510 (88 SC 1770, 20 LE2d 776).

At trial, appellant's counsel objected to the district attorney repeating his questions during qualification of the jury concerning capital punishment.

In his brief, appellant avers: "When the district attorney qualified the jury as to the death sentence all jurors who stated that they could not, under any circumstances, consider imposition of the death penalty were excused."

The state's brief contains the following assertion: "In addition it can be seen from the record that the only objection raised by the appellant with regard to voir dire concerned the "repetitiousness" of the district attorney's questions respecting conscientious objection to the death penalty. Otherwise, no jurors were struck because of such conscientious objection."

The *Owens* case is clearly limited to situations where veniremen are excused because of opposition to the death penalty and the death penalty is subsequently imposed.

In the present case a judgment of the trial judge on motion to correct the transcript pursuant to Code Ann. § 6-805 (f) reflects: "no prospective juror was excused on the

basis of being conscientiously opposed to capital punishment . . . the district attorney did ask the question as to whether anyone on the panel had any opposition to capital punishment, but he did not receive an affirmative answer from a single juror, and therefore the court did not excuse or disqualify a prospective juror on the grounds they were opposed to capital punishment."

No prospective jurors having been excused on the ground of opposition to capital punishment, we conclude this enumeration is without merit.

8. In Enumerations 19, 23, 24, 28, 29, 34, 37 and 39 appellant contends the court erred in overruling his objection to testimony of certain witnesses on the grounds that such testimony was hearsay.

We have examined the testimony in each of these enumerations and find that the testimony was not hearsay or falls within one of the exceptions to the hearsay rule. These enumerations are without merit.

9. In Enumerations 20, 22, 26, 27, 30, 31, 32, 33, 42, 43, and 44, appellant attacks the admissibility of certain specified evidence and testimony of some witnesses.

Four of the enumerations relate to the testimony concerning, and the admissibility of, an iron bar utilized by the leader of the escape which was participated in by appellant. The evidence in the transcript indicates this was a concerted escape effort. As an instrument of the crime the bar was admissible and the testimony objected to concerning its use and retrieval was also admissible.

Other testimony and evidence objected to concerned the physical condition of the rape victim, identification of evidence found on appellant, chain of custody and relevancy. Although some of the objections may have gone to the weight of the evidence which is in the province of the jury, this testimony and evidence were material and relevant to the issues before the court.

10. In Enumerations 25, 36 and 38 appellant alleges the trial court erred in permitting the state's witnesses on direct examination to testify in response to leading questions over the objections of the appellant.

The Georgia statutory (Code § 38-1706) and case law, e.g., *Ford v. State,* 232 Ga. 511 (10) (207 SE2d 494), recognize that this is within the sound discretion of the

trial court.

There are three isolated instances in this trial to which exception was taken. The trial judge directed the prosecutor to recast his question in the first instance and allowed the second question of whether a witness recognized a drawing as being a correct representation generally of a house where some of the offenses occurred. In the third instance, after directing the prosecutor not to lead the witness, the trial judge permitted the witness to answer "if he could recall anything else he put on the radio other than what he's told the jury already."

Under the circumstances, we find no abuse of discretion on the part of the trial judge. These enumerations are not meritorious.

11. In Enumeration 40, appellant complains that the trial court erred in unduly restricting defense counsel's cross examination of the witness W. E. Strickland, Sheriff of Ware County, Georgia. The transcript reveals that this line of questioning by appellant's counsel was argumentative.

"The Court: (Interposing) Just a minute. What are we doing here now? You're arguing about what one witness said and what another witness said. Let's go on. If you want to question this witness, question this witness.

"Mr. Bennett: I was under the impression that we were entitled to a thorough and sifting cross examination.

"The Court: What I'm stopping you from doing is comparing what this witness said with what another witness said, and you're getting into an argument of whether this witness said this or that witness said that. If there is anything you want to ask this witness you may ask him that's pertaining to this case. Let's proceed."

The right of cross examination, thorough and sifting, of every party as to witnesses called against him is guaranteed by statute. Code § 38-1705. But this guarantee does not include the right to be argumentative with a witness called by the other side. *Locke v. State,* 229 Ga. 110 (4) (189 SE2d 410); *Post v. State,* 201 Ga. 81 (39 SE2d 1); *Porier v. Spivey,* 97 Ga. App. 209 (3) (102 SE2d 706); *Loomis v. State,* 78 Ga. App. 153, 168 (51 SE2d 13).

The trial court did not abuse its discretion in limiting

defense counsel's argumentative line of questioning of the witness.

12. In Enumerations 45 and 46, appellant alleges the trial court erred in overruling appellant's motions for mistrial or in failing to properly instruct the jury when, during the state's closing argument, the district attorney argued:

" . . . and I will tell you something else that is reasonable to assume—when those officers got there in that situation if he had put a knife to her at that time we wouldn't be having a trial today. That's exactly why he didn't." And,

" . . . any contact with this fellow could mean instant death." In each instance the trial court overruled the motion but specifically cautioned the district attorney to "stay away from that."

In the charge, the trial court instructed the jury that: " . . . [the] evidence . . . does not include the opening statements and the closing arguments of counsel."

If the remarks of counsel exceeded the bounds of fair comment on inferences to be drawn from the evidence, the timely corrective action of the trial judge in admonishing counsel to "stay away from that" and his charge to the jury that statements of counsel were not evidence effectively removed any prejudicial effect of the remarks. Code § 81-1009. See, *McCluskey v. American Oil Co.,* 225 Ga. 63, 65 (166 SE2d 830); *Howard v. State,* 229 Ga. 839, 840 (195 SE2d 14); *Brand v. Wofford,* 230 Ga. 750 (9) (199 SE2d 231).

The record does not reflect a manifest abuse of discretion in overruling the motion for mistrial and does not require reversal by this court.

13. The sufficiency of the evidence is attacked by appellant in Enumerations 47, 48, 49, and 79.

We have carefully reviewed the evidence and find that there is evidence in the transcript from which the jury could find each element of the offenses of escape, armed robbery, rape, kidnapping and motor vehicle theft. The testimony of the victims was clear and un-contradicted. *Strong v. State,* 232 Ga. 294 (206 SE2d 461); *Kendricks v. State,* 231 Ga. 670 (203 SE2d 859); *Geter v. State,* 231 Ga. 615, 618 (203 SE2d 195). The

uncontradicted evidence shows appellant escaped from Ware County Prison, broke into the Carver house, robbed the husband, raped the wife and abducted her in the Carver automobile. Thus, the evidence is more than sufficient to sustain the convictions.

14. In Enumerations 50 to 65, appellant alleges errors in the presentation of evidence at the pre-sentence hearing of the trial. Specifically, he asserts that the identification of evidence of the appellant's prior convictions was improper, that the admission of testimony pursuant to the appellant's prior convictions was error, that the admission of records of prior convictions with the indictments affixed thereto was error, that certain photographs, though not admitted as evidence, were displayed before the jury in an inflammatory manner, that he was not given notice of the appearance of one of the witnesses who served to identify the records of appellant's prior convictions and irrelevant testimony was elicited from this witness as well as another witness.

Certified copies of appellant's prior convictions of rape, kidnapping, murder and aggravated assault were admitted in evidence. Clerks of the Superior Courts in which the convictions were rendered certified to the authenticity of these documents in accord with Code § 38-601; *Musgrove v. State,* 230 Ga. 46 (195 SE2d 407); *McIntyre v. Balkcom,* 229 Ga. 81 (189 SE2d 445); *Spurlin v. State,* 228 Ga. 763, 766 (187 SE2d 856).

Although not required to do so, Warden Bruce Brown, of the Ware Correctional Institute, connected appellant with the sentences. During his questioning of Warden Brown, appellant's counsel challenged the records on the ground that the names on two of the records of prior convictions were spelled differently than that of the appellant. Thereafter, Gary Hull, investigator for the district attorney, Augusta Judicial Circuit, testified that he investigated the crimes reported by the two records of conviction and that the appellant was the person represented by those two records. Appellant objected that he had not been advised Gary Hull would be called. The district attorney stated in his place that at the time this original trial started he did not have the name of this

individual. Indeed, the necessity for this witness did not arise until appellant's counsel challenged the records during Warden Brown's testimony. Although Warden Brown's testimony at first may have seemed superfluous, once the convictions were attacked for misnomer, the testimony of Gary Hull was admissible as was the testimony of J. E. Murhee, Deputy Sheriff, Ware County concerning an admission by appellant that he already had a sentence of life imprisonment. The indictments in each case likewise became relevant for connection with appellant.

Gary Hull in his testimony referred to the condition of the victim of one of the prior convictions when he found her. In addition to ruling that testimony out when given, the trial court instructed the jury in the clearest terms as follows: "I instruct the jury that they are not to consider any testimony of that particular witness other than just testimony of identification." The transcript does not show that the photographs of the victim in the prior convictions were ever shown to the jury in this case. We find no error.

The testimony of Warden Brown and Investigator Hull identifying the accused as the same person referred to in the records of prior convictions was admissible under Code Ann. § 27-2503. *Davis v. State,* 229 Ga. 509 (192 SE2d 253) (concerning Code Ann. § 27-2534, a prior identical provision).

We find no error in admission of the evidence in aggravation, which materially affected the rights of appellant, and any specified error that occurred was corrected by timely instructions from the trial judge.

15. Appellant's enumerations of error 66 to 76 are directed toward the remarks of the district attorney in his argument on the sentence and the trial court's action on defense counsel's objections thereto.

Enumerations 66 and 67 concern the following reported remarks of the prosecutor, appellant's motions with respect thereto and the action of the trial court thereon.

"Mr. Pritchard: . . . In Count 2, the charge of rape, the statutory aggravating circumstances as provided by our law would show that he was found guilty of rape; that the offense of rape was committed by a person with a prior

record of conviction of a capital felony. It would also add another statutory ground that the offense of rape was committed while the offender was engaged in the commission of another capital felony, to wit: the armed robbery of Allen Carver, as charged in Count 1 of the indictment. So, you see once again the law of Georgia in the safeguards as set out by the Supreme Court requiring certain other statutory grounds of aggravation. The Georgia law has provided other safeguards for the jury. Upon the trial, the judge, your Honor, has the right, after the jury recommends death to grant the defendant a new trial if he sees fit; and an automatic appeal is provided, and the entire Supreme Court of Georgia considers not only was the evidence of guilt established, but also that the evidence warrants the death sentence —

"Mr. Bennett: (Interposing) Now, if it please the court, we feel that the argument of possibility of appeal and the possibility of remission of the sentence —

"The Court: (Interposing) That has nothing to do with this argument, and I instruct the jury to disregard any such argument.

"Mr. Bennett: Your Honor, we move for a mistrial at this time. I believe that taints the jury with the suggestion that —

"The Court: (Interposing) This is a sentencing phase of the trial now, and anything that the State is arguing has nothing to do with your decision, and I'm not telling you to — I'm directing that you disregard any such argument. It has nothing to do with it. You are now here to impose a sentence that this jury sees fit to do under the evidence and under the law, and you will pay absolutely no attention to anything else other than those two criteria I have just told you. Now, proceed.

"Mr. Bennett: May we have a ruling on our motion?

"The Court: Overruled.

"Mr. Pritchard: May it please the court, I state this for the sole purpose of showing the safeguards —

"Mr. Bennett: (Interposing) We renew our motion for mistrial.

"The Court: Overruled. This has nothing to do with this case, and the jury again is instructed that you are to determine the sentence in this case and the punishment

as it is from the evidence of the first trial and the evidence that has now been introduced to you, and that is the only thing you are to consider. Now, let's do not go into any of that again."

In *Prevatte v. State,* and *Jordan v. State,* 233 Ga. 929 (214 SE2d 365), this court held that argument from the state at the sentencing phase of the trial involving the death penalty, to the effect of the defendant's right to appeal and automatic review of whether or not the evidence merited the death sentence, or the trial judge's discretion in setting aside the death penalty, is prejudicial and reversible error. In those cases no objection was made at the trial and no cautionary instructions were given by the trial court.

In the present case, we believe the timely cautionary instruction of the trial court was adequate to remove the prosecutor's remarks from consideration by the jury and eliminated any effect the remarks may have had "to attach diminished consequence to their verdict, and to take less than full responsibility for their awesome task of determining life or death for the person before them."

The other remarks of the state that were objected to consisted of a reference to the death penalty as a deterrent for crime, statements to the jury that, "The State of Georgia and you as citizens have the right to put someone to death. That's what you've got to decide," comments on the prior convictions of the appellant, comments on the testimony of Gary Hull which the trial judge again instructed the jury to ignore.

A prosecutor may argue for a death sentence and offer plausible reasons for his position (*Allen v. State,* 187 Ga. 178, 182 (200 SE 109); *Strickland v. State,* 209 Ga. 675 (2) (75 SE2d 6)) and the district attorney may urge severe punishment. *Bailey v. State,* 153 Ga. 413 (4) (112 SE 453); *Hamilton v. State,* 131 Ga. App. 69, 70 (205 SE2d 24). See also *Chenault v. State,* 234 Ga. 216. These enumerations are not meritorious.

16. Appellant complains in Enumeration 77 that the court furnished to the jury the aggravating circumstances which they are allowed to consider and also a form for their verdict. This issue was decided adversely to appellant in *McCorquodale v. State,* 233 Ga. 369 (12) (211

SE2d 577).

17. We can find nothing in the record or transcript to support appellant's Enumeration 78 that the court considered that portion of the pre-sentence investigation which is not a part of the aggravating circumstances considered by the jury. This enumeration is without merit.

### III.
### Appeal in Case No. 30006.

Appellant contends a post-trial hearing on a motion to correct the trial transcript pursuant to Code Ann. § 6-805 (f) was infected with three substantial errors.

1. The first enumeration of error involves the validity, objected to at the hearing, of conducting this proceeding in Coffee County, Georgia, when venue of the criminal case was in Ware County. The motion to correct the transcript is in the nature of court administration, rather than a trial in the usual sense. When it is held within the same judicial circuit by the same trial judge, no problem of venue of trial arises. Venue concerns the trial of cases, not hearings on motions to correct transcripts of cases previously tried. Code § 27-1101.

2. The second enumeration of error complains that the appellant was not present at this proceeding to correct the transcript and had not waived his presence prior thereto. Due to the nature of the proceeding the appellant's presence was not required at this adminstrative hearing with counsel.

3. The merits of Enumeration 3 are considered in Division 7, supra, and found to be without merit.

### IV.
### Sentence Review.

The death sentence was imposed after a trial on the merits by a jury. We have reviewed the sentence in accord with Ga. L. 1973, p. 159 et seq. (Code Ann. § 27-2537 (c) (1-3)), as we did in all of the previous death sentences imposed under this statute (see *Coley v. State,* 231 Ga. 829 (204 SE2d 612); *House v. State,* 232 Ga. 140 (205 SE2d 217); and, *Eberheart v. State,* 232 Ga. 247 (206 SE2d 12), et seq.), and conclude that the sentence of death imposed on the defendant, Ehrlich Anthony Coker, was not imposed under the influence of passion, prejudice, or any other

arbitrary factor. The evidence supports the jury's finding of statutory aggravating circumstances (Code Ann. § 27-2534.1 (b) (1) and (2)) viz., that the offense of rape was committed by a person with a prior record of conviction for a capital felony and the offense of rape was committed while the offender was engaged in the commission of another capital felony, to wit, the armed robbery of Allen Carver, as charged in Count I of the indictment.

We have compared the sentence in this case, considering both the crime and the defendant, with other similar cases and conclude the sentence of death is not excessive or disproportionate to the penalty imposed in those cases. Those similar cases we considered in reviewing the case are listed in the appendix.

*Judgment affirmed. All the Justices concur, except Gunter, J., who dissents.*

ARGUED APRIL 16, 1975 — DECIDED MAY 20, 1975 — REHEARING DENIED JUNE 17, 1975.

*E. Kontz Bennett, Jr., Dennis J. Strickland,* for appellant.

*Dewey Hayes, District Attorney, M. C. Pritchard, Arthur K. Bolton, Attorney General, Julius C. Daugherty, Jr.,* for appellee.

APPENDIX.

Similar cases considered by the court: *Walker v. State,* 226 Ga. 292 (174 SE2d 440); *Miller v. State,* 224 Ga. 627 (163 SE2d 730); *Massey v. State,* 229 Ga. 846 (195 SE2d 28); *McCrary v. State,* 229 Ga. 733 (194 SE2d 480); *Grantling v. State,* 229 Ga. 746 (194 SE2d 405); *Coley v. State,* 231 Ga. 829 (204 SE2d 612); *Akins v. State,* 231 Ga. 411 (202 SE2d 62); *Eberheart v. State,* 232 Ga. 247 (206 SE2d 12); *Hooks v. State,* 233 Ga. 149 (210 SE2d 668).