## 59042. CLAXTON POULTRY COMPANY, INC. et al. v. CITY OF CLAXTON.

McMURRAY, Presiding Judge.

In the late 1960's the City of Claxton entered into the retail natural gas business. Natural gas was purchased by the city from Southern Natural Gas Company and piped into Claxton. In late November, 1972, an explosion occurred at the Claxton Poultry Company plant in Claxton, Evans County, Georgia. The explosion destroyed the plant, killing two people and injuring several others. Several lawsuits resulted by reason of this explosion.

In the case sub judice Claxton Poultry Company, Inc., and six insurance carriers brought suit against the City of Claxton, filed November 7, 1973, alleging negligence which resulted in the natural gas explosion and seeking to recover loss of profits, damages to plant and equipment and punitive damages. Plaintiffs alleged therein that the explosion was caused by faulty maintenance or installation of the gas regulator. The petition was several times amended in which it was alleged that the defendant, by and through its agents, servants and employees, negligently installed, operated and maintained the natural gas supply system, "thereby permitting a greatly excessive internal pressure to be applied to a certain natural gas pressure control regulator" which allegedly failed and ruptured, "permitting large amounts of natural gas to escape into the air and to be ignited, causing the massive explosion which resulted in the claimed damages to Plaintiffs," as well as other acts of negligence with reference to the

natural gas system and safety precautions.

Plaintiffs, by amendment, sought actual damages to the property and business of plaintiff Claxton Poultry Company, Inc., in a sum of almost $3,000,000. They sought the further sum of $500,000 as punitive damages and alleged that the defendant municipality had waived any claim of status of governmental immunity with respect to the local distribution and sale of natural gas and with specific respect to matters complained of herein. The ante litem notice required to be given municipalities by Code Ann. § 69-308 (Ga. L. 1953, Nov. Sess., p. 338; 1956, pp. 183, 184) before suit was given, and no issue involves the notice which was acknowledged by the City, although the City denied in its answer that it had waived governmental immunity.

The City answered and in general denied the claim and that the explosion was caused in anywise by its actions, admitting, however, that it was subject to the jurisdiction of the court.

This is the second appearance of this case in this court, the first being *City of Claxton v. Claxton Poultry Co.,* 134 Ga. App. 679 (215 SE2d 718) (1975), in which this court affirmed the trial court's denial of summary judgment. For a companion case, reference is here made to *Doak v. City of Claxton,* 140 Ga. App. 588 (231 SE2d 538) (1976), in which this court affirmed the judgment in favor of the defendant City of Claxton in which one of the employees of the chicken processing plant sued for personal injuries received in the explosion.

In 1978, following the publication of several articles appearing in a local newspaper with reference to the explosion, the damage suits filed, and a series of articles dealing with the City of Claxton's natural gas system as to the system's failure to produce annual profits and the reasons for its failure to do so, plaintiffs moved for a change of venue. After hearing evidence and considering the motion, it was denied. The case proceeded to trial and the jury returned its verdict, finding the City of Claxton "not guilty of negligence as charged." Whereupon judgment was entered in favor of the defendant, and motion for new trial was filed, amended, and thereafter denied. Plaintiffs appeal.

Plaintiffs enumerate as error the trial court's denial of their motion for a change of venue; the court's failure to allow individual voir dire of each prospective juror outside the presence of the other jurors; the court's failure to declare a mistrial because of an inflammatory question propounded by the City to one of plaintiffs' witnesses; the court's exclusion of testimony regarding business losses; the court's refusal to give nine requested charges relating primarily to municipal corporations dealing in natural gas; and the court's failure to grant a new trial. *Held:*

1. The first enumeration of error is concerned with the denial of

the motion for change of venue. At the hearing of same plaintiffs produced four public witnesses who testified as to their contentions with reference to the inflammatory nature of the newspaper articles, that is, that the explosion was not the fault of the City; that any judgment in favor of the party injured or damaged would be paid by the City in taxes or increased rates imposed on gas companies; that the principal stockholders of Claxton Poultry Company, Inc., did not need the money sought in this action; and that this action was brought by the insurers of Claxton Poultry Company to get their money back for payments made to the company for its damages. These witnesses then asserted their opinions that plaintiffs could not get a fair trial in Evans County. The City, however, demanded its constitutional right to be tried in the city of its residence, arguing that the newspaper articles were evenhanded and that Claxton Poultry Company was not without friends in the county. It is noted here that the motion was not denied until after the voir dire examination of the jury panel.

A. Our Constitution states that civil cases generally "shall be tried in the county where the defendant resides . . . except cases in the Superior Courts where the Judge is satisfied that an impartial jury cannot be obtained in such county." Art. VI, Sec. XIV, Par. VI, Constitution of Georgia of 1976 (Code Ann. § 2-4306). With particular reference to criminal cases "[t]he statutory counterpart of this constitutional provision appears in Code Ann. § 27-1101. That Code section adds the following: 'When he becomes thus satisfied, he may change the venue for the trial.' " *Jarrell v. State,* 234 Ga. 410, 415 (2) (216 SE2d 258). In determining this question the trial judge may examine by voir dire those persons named on the jury list (Code § 3-207), although such an undertaking is not required. See *Attaway v. State,* 149 Ga. App. 693, 694 (256 SE2d 94) (1979). The judge is also authorized to consider other evidence such as the testimony of public witnesses "in order to throw light on the condition of the public mind . . ." *Rawlins v. State,* 124 Ga. 31, 40 (2) (52 SE 1) (1905).

In order to establish that they did not receive a fair trial, plaintiffs must show "(1) that the setting of the trial was inherently prejudicial or (2) that the jury selection process showed actual prejudice to a degree that rendered a fair trial impossible." *Street v. State,* 237 Ga. 307, 311 (227 SE2d 750) (1976). *Street v. State,* 237 Ga. 307, supra, is predicated upon the decision in Murphy v. Florida, 421 U. S. 794, 800 (95 SC 2031, 44 LE2d 589). It is clear in Murphy v. Florida, supra, that the language in regard to an inherently prejudicial setting of a trial relates to those situations where under the totality of circumstances the general atmosphere in the community or courtroom is sufficiently inflammatory that prejudice

is presumed. The leading cases in which inflammatory publicity raised a presumption of prejudice include Rideau v. Louisiana, 373 U. S. 723 (83 SC 1417, 10 LE2d 663); Estes v. Texas, 381 U. S. 532 (85 SC 1628, 14 LE2d 543); Sheppard v. Maxwell, 384 U. S. 333 (86 SC 1507, 16 LE2d 600), and Irvin v. Dowd, 366 U. S. 717 (81 SC 1639, 6 LE2d 751). The several newspaper articles regarding this matter in the case sub judice which have appeared over a period of time preceding the trial do not amount to the utterly corrupting and sensationalistic coverage which has resulted in these decisions.

B. It has long been the law in Georgia that a citizen or resident of a municipal corporation, if otherwise competent to serve, is not incompetent to serve as a juror in a case in which that municipal corporation is a party or is interested. Code § 59-715; *Hickox v. State,* 138 Ga. App. 882 (1) (227 SE2d 829). Indeed, jurors are not required to be totally ignorant of the facts and issues involved in the case tried before them. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence. Murphy v. Florida, supra; *Allen v. State,* 235 Ga. 709, 712-713 (221 SE2d 405).

C. It is well established in Georgia that the matter of whether a change of venue is appropriate lies within the sound discretion of the trial court and this discretion will not be disturbed unless an abuse of this discretion is shown. *Shinholster v. State,* 150 Ga. App. 221 (1) (257 SE2d 342); *Allen v. State,* 235 Ga. 709, 712-713, supra; *Jarrell v. State,* 234 Ga. 410, 415 (2), supra. The plaintiffs in this case have shown no abuse of discretion but have only attempted to create by innuendo a shadowy mid-world within which individual factors, though not separately requiring a change of venue, somehow metaphysically form a combination producing citizenry who are not only prejudiced against the plaintiffs but concealed this prejudice on voir dire.

The trial court did not err in denying the motion for a change of venue after hearing evidence and after voir dire examination of the jury panel. *Veal v. Paulk,* 121 Ga. App. 575, 578 (4) (174 SE2d 465) (1970). "Whenever, by an examination voir dire of the persons whose names are on the jury list and who are compellable to serve on the jury, the presiding judge shall be satisfied that an impartial jury cannot be obtained in the county where any civil cause is pending, such civil cause may be transferred to any county that may be agreed upon by the parties or their counsel." Code § 3-207. The language of Code § 3-207 manifests the legislative intent that a trial judge may transfer a civil case only when he is satisfied that an impartial jury cannot be obtained in the county where pending and that this determination shall be made "by an examination voir dire of the persons whose names are on the jury list . . ." The voir dire

examination here revealed no affirmative showing of bias, hence there is no basis for this court to say that the trial judge abused the broad discretion with which he is entrusted.

2. Code Ann. § 59-705 (Ga. L. 1949, p. 1082; 1951, pp. 214, 215) has been consistently construed by this court and by the Supreme Court as giving no right to sequestration during voir dire. In *Whitlock v. State,* 230 Ga. 700, 705 (5) (198 SE2d 865), the Supreme Court held: "Code Ann. § 59-705 gives defense counsel the right to examine jurors individually after the usual voir dire questions have been put by the trial court to the jury as a panel. The right does not encompass isolated examination. The single purpose for voir dire is the ascertainment of the impartiality of jurors, their ability to treat the cause on the merits with objectivity and freedom from bias and prior inclination. The control of the pursuit of such determination is within the sound legal discretion of the trial court, and only in the event of manifest abuse will it be upset upon review." Other cases holding that such a request or motion for sequestration lies solely within the discretion of the trial court include *Carter v. State,* 137 Ga. App. 824, 826 (3) (225 SE2d 73) and *Finney v. State,* 242 Ga. 582, 586 (4) (250 SE2d 388). The trial court did not abuse its discretion in denying plaintiffs' motion where sequestered examination would be unduly time consuming and where, as the court put it, "we don't have the facilities for it." There is no merit in this complaint.

3. During the trial the plaintiffs' engineering expert witness was being cross examined by counsel for the defendant with reference to his interest or want of interest in which he had answered, "I'm interested in presenting my engineering opinions, yes." Counsel then asked "And you're interested in getting them accepted at this time, aren't you?" Whereupon objection was made by counsel for the plaintiffs and sustained. However counsel was dissatisfied and upon the jury's being excused counsel moved for a mistrial. The court considered the question as being highly prejudicial although the interest of the engineer did not necessarily refer to any other trial, advising counsel that if there were any other reference to it then the court would grant a mistrial. Upon the return of the jury the trial court instructed the members to disregard the last question and the response given (although there was none) "because the Court has ruled that out, as being immaterial and irrelevant as to the facts in the case." In a thorough and sifting cross examination counsel for the defendant had an absolute right to inquire into interest or want of interest that the witness might have, financial or otherwise, and the witness had answered that he was interested in presenting his engineering opinion. There was no reference to any previous trial, and it is highly unlikely that the jury would have construed the

question as being directed to any specific prior trial of this same explosion. However, as the objection was sustained and the jury thereafter instructed to disregard the question and response, no prejudicial error has been shown. We find no reversible error here.

4. One of plaintiffs' claims of damages was lost profits sustained by plaintiff Claxton Poultry Company, Inc., by reason of the explosion. The general rule is that the expected profits of a commercial business which are too uncertain and speculative to afford a basis for compensation cannot be considered. *Norris v. Pig'n Whistle Sandwich Shop, Inc.,* 79 Ga. App. 369 (53 SE2d 718); *Palmer v. Atlantic Ice & Coal Corp.,* 178 Ga. 405 (2) (173 SE 424). However, an exception to this rule is that where the type of business and history of profits make the calculation of profits reasonably ascertainable, evidence of lost profits may be considered. See *Atlanta Gas Light Co. v. Newman,* 88 Ga. App. 252, 253 (2) (76 SE2d 536); *Globe Motors, Inc. v. Noonan,* 106 Ga. App. 486 (1) (127 SE2d 320). Plaintiff Claxton Poultry Company, Inc., was a subsidiary of a parent company. In an attempt to establish the lost profits for Claxton Poultry Company, Inc., its accountant testified that there were no records of profits or losses available prior to 1971. He testified for the fiscal year ending March 31, 1971, it lost $5,889; for the fiscal year ending March 31, 1972, it lost $40,190.12; for the 7-month period prior to the explosion, April 1, 1972, through October 31, 1972, the profits were $440,000. He then estimated that based on the 7-month period, the lost profits at $40,000 per month would have amounted to the $1,657,300 figure which the court excluded because it was based on a projected figure derived from the 7-month period and not on efficiency, market conditions, volume, labor costs, supply, demand, or similar factors. The court stated it would require him to testify that he is familiar with the chicken market, all necessary elements that go into operating the chicken business, and from his experience in working with the books that in 1972 the conditions were such that they were able to maintain the sale of chickens at a percentage above their cost and as a result of all the imponderables they had a percentage profit which they did in 1973 and again in 1974 such evidence would be admissible upon establishing such foundation. Whereupon counsel asked the witness could he testify to that, at which time the witness stated that it would take him a long time (two weeks) to obtain the information requested by the court. Motion for continuance for this reason was made and denied. Without proof of the underlying factors which create the profit and loss and a comparison of these factors for the various accounting periods, the estimates made by the witness, under the circumstances (various factors immediately unavailable to witness here), were speculative

and properly excluded by the trial court.

However, even if this testimony with reference to lost profits was improperly excluded, it constituted harmless error here because it is relevant only to the measure of damages which is not a ground for reversal where the jury has rejected the plaintiffs' contentions of liability. *Stubbs v. Greyhound Lines, Inc.,* 116 Ga. App. 58 (156 SE2d 474); *Maloy v. Dixon,* 127 Ga. App. 151 (193 SE2d 19), cited in footnote 2, pp. 156, 157. The verdict here was rendered in favor of the defendant. Any ruling as to lost profits was at most harmless error. See also *Marshall v. Fulton Nat. Bank,* 154 Ga. App. 51 (1980) by reason of *Fulton Nat. Bank v. Marshall,* 245 Ga. 745 (267 SE2d 225) (1980). This issue may not appear on new trial as plaintiffs may very well be able to present proper evidence substantiating the claim for lost profits if time were a factor in being able to obtain such evidence during the course of the trial here.

5. Plaintiffs alleged in their pleadings that the defendant municipality had waived any status of governmental immunity with respect to the local distribution and sale of natural gas and with specific respect to the matter complained of herein. The defendant City denied this in its answer. However, the issue of governmental immunity never arose thereafter. Objection is here made that the trial court had failed to charge plaintiffs' written request that the City can be sued as any other corporation on a claim that it improperly operated its gas business. In this case the issue of whether or not the doctrine of sovereign immunity would apply was no longer before the jury. Further, an examination of the entire charge clearly shows the court fully instructed the jury that the defendant was bound by the negligent acts of its employees and that if any negligent acts were committed by defendant's employees or agents the principal was bound for the care and diligence of its agents and employees in its business and if the negligence of the defendant was the proximate cause of plaintiffs' damages then it would become necessary for the jury to find for the plaintiffs. The substance of the written request was covered in the charge as given. *Hardwick v. Price,* 114 Ga. App. 817, 821 (3) (152 SE2d 905); *Seagraves v. ABCO Mfg. Co.,* 121 Ga. App. 224, 226 (3) (173 SE2d 416); *Atlanta & W. P. R. Co. v. Armstrong,* 138 Ga. App. 577, 581 (5) (227 SE2d 71).

6. The next complaint is that the trial court erred in failing to give plaintiff Claxton Poultry Company, Inc.'s written request to charge that if the employees and officials of the City of Claxton "in charge of the gas company or in the performance of their duties in the sale and distribution of gas to the Claxton Poultry Company were negligent or careless, as I will define to you later, and that such carelessness or negligence was the proximate cause of the explosion,

and you further find that the Claxton Poultry Company was free from negligence which contributed to the explosion, then you may find the City of Claxton liable to the Claxton Poultry Company for the damages which it sustained as a result of the explosion." The trial court also charged the substance of this written request charging in particular as to agency, negligence, proximate cause, comparative negligence, and the formula that negligence plus causation plus damages equals recovery. There is no merit in this complaint.

7. For the same reasons as those stated above, the trial court did not err in declining to give the exact language of plaintiff Claxton Poultry Company, Inc.'s request to charge that the municipal corporation "such as the City of Claxton is liable for the failure of its officers or employees to perform or for errors in performing their non-governmental functions such as the sale and distribution of gas." This charge was fully covered in the general charge as given by the trial court.

8. A written request to charge was made that the mere fact that a gas appliance is owned or controlled by the property owner does not free the City of Claxton as a distributor of gas from liability for creating a dangerous condition with reference to the appliance. It was the plaintiffs' contention that excessive pressure in the gas main was causing dirt and debris to be admitted into the gas appliances (regulators) owned by the Claxton Poultry Company and caused them to malfunction. The written request also contained language that if the gas company (City of Claxton) knew excessive pressure was causing dirt and debris to be admitted into the gas appliances owned by the Claxton Poultry Company and would cause them to malfunction, then the City of Claxton would be liable for resulting damages. The request was taken from *Milligan v. Ga. Power Co.,* 68 Ga. App. 269 (22 SE2d 662), wherein this court stated two general rules with reference to utilities. The first is that the company which merely furnishes gas for appliances on private property owned and controlled by the owner or occupant of the premises, is not liable to the owner or occupant or to third persons on the premises for injuries caused by defective conditions in the gas appliances. An exception thereto was stated that if the gas is supplied with actual knowledge on the part of the one supplying it of the defective and dangerous condition of the customer's appliances, it is liable for injuries caused by the use of such defective and dangerous appliances, but generally if the utility has no control over the appliances and has no actual knowledge of the defective and dangerous condition thereof its responsibility ends when connection is properly made under proper conditions and the gas is delivered in a manner which will protect both life and property. *Scott v. Rome R. &c. Co.,* 22 Ga. App. 474 (96

SE 569); *Hatcher v. Georgia Power Co.,* 40 Ga. App. 830 (151 SE 696); *Ga. Power Co. v. Kinard,* 47 Ga. App. 483 (170 SE 688); *Metz v. Ga. Public Utilities Corp.,* 52 Ga. App. 771 (184 SE 629); *Cornett v. Georgia Public Utilities Co.,* 63 Ga. App. 305 (11 SE2d 68).

Plaintiff's case is based upon the claims that the City, in supplying natural gas, a volatile and potentially dangerous substance, improperly handled the pressure of gas, that is, the gas pressure was too great or too little and a separator intended to serve as a filter or strainer did not work. Further, the gas that came from the gas lines was contaminated with debris, that is, rocks and sand, and a result of overpressurization resulted in the sand and rock entering the gas lines inside the Claxton Poultry Company plant, thereby causing regulators inside the plant to malfunction by damaging the diaphragm plate of one of the regulators, resulting in a rupture causing the gas to escape in the plant and the subsequent explosion.

The above request was keyed to the facts of the case. Consequently, even though the gas regulator which malfunctioned belonged to the Claxton Poultry Company and not the City, the jury was entitled to the request to charge as a part of its instructions. See *Milligan v. Ga. Power Co.,* 68 Ga. App. 269 (1), 280, supra. While the City as supplier of natural gas may not have been liable for the rupture, unless caused by excessive pressure and debris, nevertheless the jury should have been instructed with reference to the written request. The trial court erred in only giving its general charge without this request.

9. Another written request to charge was that natural gas is dangerous and that its distribution is accompanied by many possible dangerous consequences and that it is well established that a degree of care commensurate to the dangers involved is required by distributors of natural gas such as the City of Claxton to avoid injury and damage and in the case of a failure of the distributor to exercise such care the distributor is liable for the resulting damage. While the trial court carefully explained the rules as to the meaning of the preponderance of evidence; the jury to be the sole judges of the credibility of the witnesses; the impeachment of witnesses by contradictory statements; the effects of the acts of the employees or agents of a corporation; the meaning of proximate cause, ordinary diligence, ordinary negligence; the contentions of the parties; the rules of comparative negligence, contributory negligence, as well as the last clear chance doctrine; and the rule of punitive damages; nevertheless, the trial court should have given the written request to charge here that a company which distributes and furnishes natural gas is bound to use such skill and diligence in its operations as is

proportionate to the delicacy, difficulty and nature of that particular business. *Atlanta Gas Light Co. v. Davis,* 80 Ga. App. 377 (56 SE2d 140); *Harvey v. Zell,* 87 Ga. App. 280, 285 (73 SE2d 605); *Liberty Homes, Inc. v. Stratton,* 90 Ga. App. 675, 679 (83 SE2d 818); *Chisholm v. Atlanta Gas Light Co.,* 57 Ga. 28, 29 (1); *Christo v. Macon Gas Co.,* 18 Ga. App. 454 (89 SE 532). This request to charge should likewise have been given, and the trial court erred in failing to charge within the parameters of the evidence as requested.

10. The next enumeration of error contends that the following written request should have been given: "One having inflammable gas under its control must exercise care to prevent its escape or it might become ignited and explode." We think that the charge referred to in Divisions 8 and 9 with reference to the dangerous nature of natural gas and its consequence would be sufficient and that the statement requested here would be an oversimplification, more helpful to the plaintiffs than to the defendant. Here the evidence disclosed a ruptured diaphragm due to excess internal pressure inside the plant which could have caused the gas to escape through a vent opening and the resulting explosion. Both the plaintiff Claxton Poultry Company, Inc., and the defendant had the natural gas here under their control. A duty rested upon both to exercise due care to prevent its escape where it might become ignited and explode and cause injury and damage. This charge is argumentative even though it may be a correct principle. If given, it would be somewhat repetitious and more helpful to the plaintiffs. The trial court did not err in refusing to give this written request.

11. Another enumeration of error contends that the trial court erred in failing to instruct the jury as follows: "The company which produces and furnishes gas is bound to use such skill and diligence in its operation as is proportionate to the delicacy, difficulty and nature of the operation." As shown above in Divisions 8 and 9, this written request is repetitious of language in earlier written requests. Consequently, if the trial court had given the written requests in Divisions 8 and 9, it would not be necessary to repeat same as found in this written request. See such cases as *Atlanta Gas Light Co. v. Johnson,* 76 Ga. App. 413 (46 SE2d 191); *Bray v. Atlanta Gas-Light Co.,* 46 Ga. App. 629 (168 SE 96); *Chisholm v. Atlanta Gas Light Co.,* 57 Ga. 28, supra; *Christo v. Macon Gas Co.,* 18 Ga. App. 454, supra. Upon a new trial, the court will undoubtedly remedy any deficiency and avoid repetitive and argumentative charges to avoid unduly stressing the contentions of the parties. See *Wilson v. Harrell,* 87 Ga. App. 793, 806 (13) (75 SE2d 436); *Cohran v. Douglasville Concrete Products,* 153 Ga. App. 8, 14 (4) (264 SE2d 507).

For the same reason, two other written requests with reference to the inflammable nature of natural gas as being an inherently dangerous substance and the fact that a greater amount of care is necessary in dealing with an explosive than in dealing with products that are ordinarily not capable of inflicting injury would likewise be repetitious of other written requests. Had the trial court covered the substance of same as stated in Divisions 8 and 9 above that a distributor of natural gas, a dangerous and volatile substance, is bound to use such care and diligence in its operations as is proportionate to the delicacy, difficulty and nature of that particular business, it would not be necessary to repeat such requests stated another way.

Although it may not have been error for the trial court, without written request, to have failed to give the principles contained in the above written requests, under the circumstances it was error for the trial court to decline to charge these written requests shown above. In failing to do so, upon written request, the trial court committed harmful error.

*Judgment reversed. Deen, C. J., Quillian, P. J., Shulman, Birdsong, Carley and Sognier, JJ., concur. Smith and Banke, JJ., dissent as to Division 1.*

ARGUED JANUARY 15, 1980 —
DECIDED JULY 15, 1980 —

*Fred S. Clark, Malberry Smith, Jr.,* for appellants.
*Ronald W. Hallman,* for appellee.

SMITH, Judge, dissenting in part.

As I believe that the trial court erred in denying appellants' motion for change of venue, I respectfully dissent to the holding in Division 1 of the majority opinion. I concur in the holdings in the remaining divisions and in the judgment.

The following facts are worthy of note. The City's retail natural gas business did not become the profit maker it was predicted to be. In August of 1975, Evans County's only local newspaper ran a three part series explaining why this undertaking had not been profitable and what could be done to remedy the situation. In addition to relating the history of the City's involvement and financial difficulties in retailing natural gas, these articles reported that the City's customers were paying more than twice the rate for gas than that supplied by a large, statewide retailer. Further, it was reported

that talks with the statewide retailer regarding the possible sale of the City's gas system were not pursued because of the pending lawsuits. This series was followed by an article in December, 1975 reporting that an Evans County jury had returned a verdict in favor of the City in an action for damages by one of those injured in the explosion. Finally, a few days before the commencement of the trial in this action in June of 1978, an article reporting on the instant case restated the results of the 1975 personal injury case and noted also that six other personal injury suits pending at that time had been dismissed after the jury had returned a verdict in favor of the City. In fact, these cases had been settled out of court and then dismissed voluntarily.

Spurred by the appearance of the June, 1978 article, appellants moved for a change of venue contending that an attitude among the citizens of Evans County, and in particular the City of Claxton, had been induced by the newspaper articles that the explosion was not the fault of the City based on the results in the personal injury cases which stemmed from the explosion; that any judgment in favor of a party injured or damaged by the explosion would be paid by the City in taxes or increased rates imposed on gas customers; that the principal stockholder of Claxton Poultry Company, Inc. did not need the money sought in this action; and that this action was brought by the insurers of Claxton Poultry to get their money back for payments made to the company for its damages. Appellants produced four public witnesses who testified as to these contentions and asserted their opinions that appellants could not get a fair trial in Evans County. After a voir dire examination of the jury panel, the trial court overruled the motion.

Our Constitution states that civil cases generally "shall be tried in the county where the defendant resides . . . except cases in the Superior Courts where the Judge is satisfied that an impartial jury cannot be obtained in such county." Art. VI, Sec. XIV, Par. VI, Ga. Constitution of 1976 (Code Ann. § 2-4306). In determining this question, an examination voir dire of those persons named on the jury list is undertaken. Code § 3-207; see *Alley v. Gormley,* 181 Ga. 650 (1) (183 SE 787) (1935). The judge is also authorized to consider other evidence such as the testimony of public witnesses "in order to throw light on the condition of the public mind . . ." *Rawlins v. State,* 124 Ga. 31, 40 (52 SE 1) (1905); see *Alley,* supra; *Veal v. Paulk,* 121 Ga. App. 575 (4) (174 SE2d 465) (1970). In order to establish that they did not receive a fair trial, appellants must show "(1) that the setting of the trial was inherently prejudicial or (2) that the jury selection process showed actual prejudice to a degree that rendered a fair trial impossible." *Street v. State,* 237 Ga. 307, 311 (227 SE2d 750) (1976);

see Berry v. North Pine Electric Cooperative, 50 NW2d 117, 123 (235 Minn. 562) (1951). Notwithstanding that the voir dire examination here did not affirmatively disclose bias on the part of any individual juror, a change of venue should have been granted.

"A court is ordinarily reluctant to change venue on grounds that there is doubt that a fair trial can be had because in most cases the interrogation of prospective jurors is sufficient to insure that an unbiased jury is chosen." Sinderbrand v. Schuster, 406 A2d 1344, 1347 (170 N.J. Super. 506) (1979); see *Reaves v. State,* 242 Ga. 542 (4) (250 SE2d 376) (1978). However, the evidence adduced in each case must determine whether the court has exercised or abused that discretion. *Veal,* supra; see *Attaway v. State,* 149 Ga. App. 693 (256 SE2d 94) (1979). Evans County has a population of approximately 7000 people, nearly half of whom live in the City of Claxton. The 28 jurors empaneled for selection to hear this case generally reflected that distribution; several also owned property in the City. Most on the panel had read the newspaper article and many had discussed the case. A number of panel members were customers of the City's natural gas service, and several of them sat on the jury. Not-withstanding that none of these factors alone would warrant a change of venue, "it seems to us sufficient if there [were] shown facts, that is, existent influential factors, from which probable partiality in substantial degree, and upon the part of a substantial number of persons, and such as to presage appreciable and extensive influence [could] reasonably be inferred . . ." Althiser v. Richmondville Creamery Co., 215 NYS2d 122, 124 (13 A.D.2d 162) (1961).

The majority, in accepting as conclusive the juror's statements of impartiality, overlooks the fact that, "[n]o matter how conscientious they may be, jurors are but individuals, and may be subject to influences of which they themselves may often be unaware." Arkwright v. Steinbugler, 128 NYS2d 823, 825 (283 A.D. 397) (1954). For example, "[n]othing can obscure the fact that the cost of living is a major, if not a paramount, contemporary public issue. The cost of fuel is a continually publicized matter. It impinges heavily upon the income of the vast majority of our citizens and is pervasive throughout the entire economic life of our nation. It may be true that the same considerations may also affect the residents of [some other county], but at least they are not directly concerned with any consideration of a possible . . . pecuniary benefit from this lawsuit and, further, there is the strong possibility that to [the resident of some other county the parties] are distant entities which can be considered dispassionately and objectively." Long Island Lighting Co. v. New England Petroleum Co., 362 NYS2d 350, 355 (80 Misc. 2d 183) (1974).

Appellants did not fear anyone would intentionally do them an injustice. Their objection was that an unconscious, subliminal bias existed which would operate to their disadvantage. Far from being metaphysical, appellants' motion addressed the all too palpable potential for prejudice which existed in regard to the trial of this case. In addition to the indicia set out above, the jury returned a verdict not simply for the defendant, but declaring the city "not guilty of negligence as charged." "It has been said that there is nothing so essential in the administration of justice as the avoidance of seeming partiality. Every suitor is entitled to have his case tried before an impartial forum and every effort should be made whenever reasonable to avoid suspicion on his part that the opportunity for a fair trial is not being presented." Castle v. Village of Baudette, 125 NW2d 416, 418-419 (267 Minn. 140) (1963). I am of the opinion that appellants should not have been required to undertake the risk of prejudice toward their case. Therefore, I would reverse and direct the trial court to grant appellants' motion for change of venue.

I am authorized to state that Judge Banke joins in this dissent.